UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ x
                                                 :
**UNITED STATES OF AMERICA**                     :
                                                 :
              - v -                              :         11 Cr. 1059 (JPO)
                                                 :
**ZENAS GRAHAM**,                                :
                                                 :
                       Defendant.                :
------------------------------------------------ x

## SENTENCING MEMORANDUM ON BEHALF OF
## ZENAS GRAHAM

                    DAVID PATTON, ESQ.
                    Federal Defenders of New York, Inc.
                    Attorney for Defendant
                    **ZENAS GRAHAM**
                    52 Duane Street - 10th Floor
                    New York, New York 10007
                    Tel.: (212) 417-8737

                    **MARTIN S. COHEN**
                    <u>Of</u> <u>Counsel</u>

TO:    **PREET BHARARA, ESQ**.
         United States Attorney
         Southern District of New York
         One. St. Andrew's Plaza
         New York, New York 10007
         Attn:  **CHRSTOPHER DIMASE, ESQ.**
                 Assistant United States Attorney

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

April 22, 2013

By Hand

Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:    United States v. Zenas Graham**
       **11 Cr. 1059 (JPO)**

Dear Judge Oetken:

  I write in advance of Mr. Graham's sentencing, which is currently scheduled for May 1, 2013, at 3:00 p.m., to respectfully request that the Court sentence Mr. Graham to a term of time-served, with a three-year term of supervised release to follow. Under the circumstances here, where the offense conduct took place almost two years ago; where Mr. Graham has turned his life completely around since the birth of his daughter in November 2011; where Mr. Graham now has a good job as a caddy at a world-class golf-club, and intends to attend college in the fall; where Mr. Graham had a difficult upbringing, with his father incarcerated while he was a baby, and later murdered when Mr. Graham was only a young teenager; where Mr. Graham has only just turned 26 years old, and is in a committed and healthy relationship; and where the amount of drugs involved in the offense for which Mr. Graham has not previously been punished totaled about one-tenth of one gram of cocaine, a non-incarceratory sentence will be sufficient to satisfy all the purposes of sentencing. Mr. Graham will, of course, remain under the supervision of the Probation Department and this Court as he continues his terrific development as a responsible father and positive contributor to his community.

  Were the Court to find, however, that additional punitive measures were warranted, we respectfully request that the Court impose a term of Probation. Cf., e.g., United States v. Leitch, et al., 2013 WL 753445, at *12 (E.D.N.Y. Feb. 28, 2013) (Gleeson, J.) (explaining that as the Supreme Court has recognized in Gall v. United

Honorable J. Paul Oetken											Page 2
April 22, 2013

Re:	United States v. Zenas Graham,
	11 Cr. 1059 (JPO)

States, 552 U.S. 38, 48-49 (2007), a term of probation, while less severe than a term of imprisonment, constitutes "significant punishment."). And while we do not believe that a condition of home detention is necessary or warranted here, it is also an additional punitive option available to the Court, and is, in fact, endorsed as an alternative to incarceration by the applicable Guidelines themselves.[1]

I.	**The Standard**

The Guidelines range is but one of many factors set forth in 18 U.S.C. § 3553(a) that a district court is to consider when imposing sentence. See generally United States v. Booker, 543 U.S. 220 (2005). "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 129 S. Ct. 890, 892 (2009) (emphasis in original). A district court's disagreement with the policy considerations of the Guidelines, for example, is a legitimate basis for sentencing below a given range. See Gall v. United States, 128 S.Ct. 586, 602 (2007) (upholding a district court's sentence of probation in a case involving the distribution of over 10,000 pills of ecstasy where the Guidelines' range was 30-37 months); Kimbrough v. United States, 128 S.Ct. 558, 576 (2007) (upholding a district court's decision to sentence a defendant below the Guidelines range based on a disagreement with the Guidelines' policy of treating the distribution of crack cocaine more severely than powder cocaine). In every case, the sentencing court "must make an individual assessment based on the facts presented." Gall, 128 S.Ct. at 597.

The overarching command of Section 3553(a) is that sentences should be "sufficient, but not greater than necessary" to achieve the basic goals of retribution, deterrence and rehabilitation. To arrive at such a sentence, district courts are directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need for the sentence imposed to provide just punishment, deterrence, and needed educational and vocational training; (3) the kinds of sentences available; (4) the Guidelines-range and any pertinent policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution. See 18 U.S.C. § 3553(a).

---

[1] The advisory Guidelines-range here – based on an offense level of 10 and a Criminal History Category of II – is 8 to 14 months. See PSR ¶ 85. Because this range is in Zone B of the Sentencing Table, the minimum term of imprisonment may be satisfied by a sentence of probation that substitutes home detention for imprisonment. See U.S.S.G. § 5C1.1(3).

Honorable J. Paul Oetken                                                                                    Page 3
April 22, 2013

**Re:   United States v. Zenas Graham,**
       **11 Cr. 1059 (JPO)**

**II.   The Sentencing Factors**

    **A.   Mr. Graham's Background and Characteristics Support the Requested Sentence**

        1.   <u>Mr. Graham's Difficult, Fatherless Childhood.</u>

Zenas Graham grew up with his mother and siblings in the Mott Haven projects, in Manhattan. Zenas's father had been incarcerated since he was a baby, and Zenas had essentially no relationship with his father until his release from Prison, when Zenas was around 11 years old. <u>See</u> PSR ¶ 62. The Mott Haven projects was a rough place to grow up – gunfire and drugs were commonplace, and every year, a few people whom Zenas knew were killed. But growing up, it all appeared normal to Zenas. It was the only world that he knew.

Zenas believes his mother did a good a job raising the family – she imparted good morals and taught proper etiquette, and there was no physical or emotional abuse in the home. Zenas was a decent student, albeit with the tendency to play class clown.

When Zenas's father was released from custody, Zenas started to develop a relationship with him, and they began to grow closer. Tragically, his father was murdered (he was shot in the back in his apartment) when Zenas was about 15 years old. <u>See</u> PSR 62. This was an extraordinarily traumatic experience for Zenas. Indeed, Zenas had been regularly visiting – and staying overnight – in the apartment where his father was murdered.

Shortly after his father's murder, Zenas's mother decided to move down to Orlando, Florida. Zenas initially accompanied her, but he couldn't adjust to living in Florida, and returned to New York to live with his older brother in the same apartment where he grew up in the Mott Haven projects. Thus, from about the age of 15 onwards, Zenas had no parental guidance whatsoever.

His father's death traumatized Zenas. He was fixated on finding out who had committed the murder. He had more trouble relating to people, and his grades at school declined. He eventually dropped out of high school, several credits short of graduating. (Mr. Graham subsequently received his GED.)

Over time, like so many other kids, Zenas fell into the trap of the projects, where other kids showed him how you could make "easy money" by selling drugs. The lifestyle

**Re:    United States v. Zenas Graham,**
        **11 Cr. 1059 (JPO)**

seemed enticing, and Zenas – without any parental guidance to keep him on the straight and narrow – joined in. On several occasions in 2007 and 2009, Mr. Graham was convicted and sentenced for selling drugs. On August 3, 2011, Mr. Graham was arrested for selling about one tenth of one gram of crack cocaine to an undercover NYPD officer. That arrest led to this prosecution.

As described below, at the time of Mr. Graham's arrest in August 2011, he was already in the process of going through some profound changes. And the birth of his daughter three months later completed the transformation. With his baby in his arms, Mr. Graham realized that he could not throw his life away by committing additional crimes. He needed to build a stable, well-paying career for himself, and focus his energy on raising his daughter the right way. In the almost two years since his arrest, Mr. Graham has made enormous strides towards becoming a wholly positive contributor to his family and community.

> 2.    Mr. Graham Starts Dating Melissa King; Their Daughter Is Born in November 2011; Mr. Graham's Transformation.

In 2009, Mr. Graham started dating Melissa King, whom he had known since high school. See letter of Ms. King, attached as Exhibit C. At the time, Ms. King had two children: Deon, who was about one year old and lived with Ms. King; and Devante, who was about nine years old, and lived with his father. On November 2, 2011, Mr. Graham and Ms. King's daughter – Demani – was born. See Exhibit A, pictures of Mr. Graham with his daughter and Deon.

As Mr. Graham matured, he began to make some better choices, including finding relatively steady work as a laborer on construction sites. See PSR ¶ 78. But after Demani was born, his whole perspective on the world, of his responsibilities towards others – and especially towards his daughter – dramatically shifted. Mr. Graham was 24 years old at the time.

Now, Mr. Graham is wholly dedicated to providing Demani with the stable dual-parent household that he never had. He wants to give her the world, for her to have the type of childhood that he missed out on. I've seen Mr. Graham on a number of occasions with his daughter, and can represent to the Court that the love and affection between them is palpable. Miss King – who works at Target – and Mr. Graham share all the child care duties, and Demani is a delightful, happy, smiling toddler. See Exhibit A. Mr. Graham is also the father-figure for Deon, who is now five years old, and has frequent contact with

Honorable J. Paul Oetken                                                                                                        Page 5
April 22, 2013

**Re:    United States v. Zenas Graham,**
          **11 Cr. 1059 (JPO)**

Devante as well. Mr. Graham is giving his all to being a good role model to Miss King's sons.

In her letter to the Court, Miss King writes about Mr. Graham's transformation:

> I grown to learn how loving Mr. Graham really was and still is. He has a good heart and he's very good with my two sons. They look up to him as a father figure. Whenever they need him he was always there. On November 2nd, 20[11], I gave birth to his first born little girl named Demani Graham. On this day Mr. Graham was the happiest man alive. Mr. Graham has been there since day one from pregnancy to birth. He was very nervous at first but turned out to be a wonderful dad. He makes sure everything is okay with her.

See letter of Melissa King, attached as Exhibit C.

It is now about 20 months since Mr. Graham was arrested for this offense. During this period, Mr. Graham has done nothing but care for Demani, Ms. King and Deon, and work. He is currently employed as a caddie at Winged Foot Golf Club, in Mamaroneck, New York. See Exhibit B, letter of David J. Zona dated April 17, 2013. The golf season runs from April through about October. During this time, Mr. Graham can expect to earn approximately $500 a week. He plans on starting college in the fall, with a focus on computer science and information technology. In short, Mr. Graham's future prospects are very bright.

Mr. Graham is extraordinarily remorseful for his criminal acts. While it's understandable how someone from his background and environment could fall into dealing drugs, he does not view that as an excuse. He made terrible decisions, and is very sorry for having done so. He notes with some amazement how – even though he didn't know his father growing up except for those brief years before his father's murder, and even though his father didn't "teach" him anything associated with criminal activity – Mr. Graham still managed to follow in some of his father's most destructive footsteps, including committing crimes and going to jail. But Mr. Graham has vowed to break this cycle. He wants to leave an impressive legacy for his daughter – a legacy that starts with Mr. Graham building a stable career for himself, and continuing to maintain a loving and nurturing home with Ms. King, Demani and Deon.

Honorable J. Paul Oetken											Page 6
April 22, 2013

**Re:	United States v. Zenas Graham,
	11 Cr. 1059 (JPO)**

	Under these circumstances, even a brief term of incarceration will be counter-productive, resulting in Mr. Graham losing his job and livelihood, and separating him from Demani and Deon, who rely on him for emotional and financial support. Incarceration and the loss of income could also upend Mr. Graham's plans to start college in the fall. Mr. Graham is poised to be one of those great ex-offender success stories: a kid from the projects who did sell drugs, who did get convicted and served time, but who has transformed himself and now has a wholly new and very positive perspective on life. And Mr. Graham is *still only 26 years old.*

	Under our requested sentence, Mr. Graham will remain under the watchful eye of the Probation department, and this Court, for three years. I am confident that during these years the Court will see the continued growth and positive development that Mr. Graham has demonstrated over the past twenty months. Under the circumstances of this case, whatever abstract "benefit" may be derived from a brief term of incarceration is vastly outweighed by the benefits of allowing Mr. Graham to continue his impressive turnaround. This is one case where an alternative to incarceration will lead to a far more beneficial outcome, not just for Mr. Graham, but for society as a whole. See generally United States v. Leitch, 2013 WL 753445 (E.D.N.Y. Feb. 28, 2013) (In the context of the Eastern District's drug courts, describing the benefits of alternatives to "unnecessary, destructive and exorbitantly expensive" incarceration for certain low-level offenders).

**III.	Conclusion**

	For these reasons, we respectfully request that the Court sentence Mr. Graham to a term of time served, to be followed by a three-year term of supervised release. Such a sentence will be sufficient, but not greater than necessary, to satisfy all of the purposes of sentencing.

							Very Truly Yours,


							/s/
							Martin S. Cohen
							Assistant Federal Defender
							Tel.: (212) 417-8737

cc.	Christopher DiMase, Esq., by ECF
	Mr. Zenas Graham, by mail

# Exhibit A





# Exhibit B



**WINGED FOOT GOLF CLUB**
FENIMORE ROAD
MAMARONECK, NEW YORK 10543-2119
Telephone (914) 698-8400
Fax (914) 698-6470

April 17, 2013

To Whom It May Concern:

This letter will acknowledge that **Zenas Graham** is presently self-employed as a caddie at Winged Foot Golf Club. Zenas works regularly during the golf season and has stated that as an independent contractor he earns approximately $500 per week. Zenas's compensation is determined solely by the members he serves.

If there is any further information needed regarding this matter, please feel free to contact me at anytime.

Most Sincerely,

David J. Zona
Caddie Master
Winged Foot Golf Club
914-698-8400 ext 330

# Exhibit C

Honorable J. Paul Oetken
United States
District Judge
United States
Courthouse
500 Pearl Street
New York, NY
10007

Dear Judge Oetken,

This letter is in reference to my child's father Mr. Zenco N. Graham. I've known Mr. Graham for 8 years now. We went to the same high school together Satilite Acadmy High School in the South Bronx section of the Bronx. Honestly we didnt speak much because he was very quiet. I didnt see each other again until until 2009 when I was employed at McDonalds on 161 st in the bronx.

And from then on we have been together, a little after that Mr Graham had a run in with the law Putting him away for a year. In October 8th 2010 Mr Graham came home from jail vowing he would change his life, Not only for himself but also for me. I grown to learn how being Mr Graham really was and still is. He has a good heart and his is very good with my two sons. They look up to him as a father figure. When ever they need him he was always there. On November 2nd 2012, I gave birth to his first born little girl named Demani Graham. On this day Mr Graham was the happiest man alive.

Mr Graham has been there since day one from pregnacy to the birth. He was very nervos at first but turned out to be a wonderfull dad. He makes sure everything is ok with her. As of right now Mr Graham is empolyed at Wingfoot Golf course where he works every day as long as the weather permitts. Mr Graham going to jail right now would not only take him from his job but also his family. He needs to be there for his daughter as well as my kids. My daughter adors him so much and would be heartbroken if was to be taken away.

Thank you
Melissa King
(girlfriend)